UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ERNEST DICKENS,

                                         :

                Plaintiff,                        15 Civ. 2105 (AJP)

                                         :

            -against-                       **OPINION & ORDER**

                                         :

HUDSON SHERATON CORPORATION, LLC;
TOM MITUZAS; ORLANDO TRINIDAD;      :
GEOFFREY HORNER; and JORDAIN FRANCOIS,

                                         :

                Defendants.

                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

          Plaintiff Ernest Dickens brings this action against Hudson Sheraton Corporation, Tom Mituzas, Orlando Trinidad, Geoffrey Horner and Jordain Francois for their alleged violation of various anti-discrimination laws.  (See generally Dkt. No. 22: 2d Am. Compl.)  Dickens previously dismissed his second, third, sixth and seventh causes of action.  (Dkt. No. 44: 9/21/15 Order.)  Presently before the Court is defendants' January 8, 2016 summary judgment motion on Dickens' remaining claims, under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, and Title VII.  (Dkt. No. 58.)  For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

          Dickens has been employed by defendant Hudson Sheraton Corporation ("the Hotel") since 1983 as a "'houseman.'"  (Dkt. No. 62: Def. Rule 56.1 Stmt. ¶ 1; Dkt. No. 67: Pl. Rule 56.1 Counter Stmt. ¶ 1.)  Dickens is a union member with the New York Hotel and Motel Trades Council, Local 6.  (Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 5.)  Dickens claims that in 1996, he was put in charge of the Hotel's supply room as a "'team leader.'"  (Dkt. No. 66: Dickens Aff. ¶ 2.)

During his employment with the Hotel, Dickens has received "all salary raises and other benefits due to him under the terms of the" collective bargaining agreement between the Hotel and the Union.  (Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 42.)

Defendant Tom Mituzas joined the Hotel's Human Resources Department in 1994 as a manager and became Area Director in 2007.  (Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 2.) Mituzas' positions entail familiarity with complaints made to the Hotel's Human Resources Department by employees or the Union on their behalf.  (Id.)

Dickens alleges that defendants, primarily through Mituzas, have discriminated and retaliated against him since 2001. (See Dkt. No. 22: 2d Am. Compl. ("SAC") ¶ 1; Dickens Aff. ¶ 4.)

Dickens asserts that his conflict with Mituzas arose in 2001 when Dickens filed an age discrimination complaint with the New York State Division of Human Rights ("NYSDHR") against housekeeping manager Igor Buercher.  (Dickens Aff. ¶ 4.)  Mituzas asked Dickens to voluntarily dismiss the complaint against Buercher, with whom Mituzas had a "professional and non-professional relationship"; Dickens refused and Mituzas "became enraged."  (Id.)  According to Dickens, Mituzas has "been engaged in various forms of intimidation and retaliation since that time, and has not behaved as a neutral Human Resources professional towards" Dickens.  (Id.)

In July 2004, Dickens alleges that he made a sexual harassment complaint to the Hotel against coworker Ramon Santiago.  (Dickens Aff. ¶ 5; Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 6.)  Dickens was in his early sixties at the time.  (See Dkt. No. 68: Dickens Br. at 7.) Mituzas, who "was in his 30s at the time" (Dickens Aff. ¶ 5), allegedly ignored Dickens' complaint and ordered him to attend anger management (Dickens Aff. ¶ 6; Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶¶ 6-8).  Mituzas denies ordering Dickens to attend anger management in retaliation, and has no recollection of his complaint.  (Dkt. No. 59: Mituzas Aff. ¶ 7; Def. Rule 56.1 Stmt. & Pl. Counter

Stmt. ¶¶ 6-8.)

In April 2005, Mituzas accused Dickens of threatening defendants Orlando Trinidad and Jordain Francois (Hotel employees in their forties at the time) at knife point.  (Dickens Aff. ¶ 10.)  Trinidad and Francois corroborated the threat.  (<u>Id.</u>)  Dickens argues that these allegedly false allegations were "a continuation of the harassing and ridiculing behavior that had been occurring due to age and race, by Mituzas and by non-black and considerably younger 'housemen.'"  (<u>Id.</u>)

The Hotel's human resources department investigated the matter, leading to a labor mediation on October 7, 2005 at which Dickens was represented by his union.  (Mituzas Aff. ¶ 8.)  Dickens, the union, the labor mediator and the Hotel signed an agreement whereby Dickens released the Hotel from all liability and agreed to be evaluated by the union Health Assistance Program.  (<u>Id.</u> & Ex. A: Voluntary Settlement Agmt.)  In return, Dickens' potential termination was converted to a one-day suspension.  (<u>Id.</u>)  Although Dickens maintains that the settlement was a "forced agreement" and that Mituzas ordered him to attend counseling without cause (Dickens Aff. ¶ 11), defendants claim that the Health Assistance Program, not Mituzas, enrolled Dickens in the outpatient counseling program (Def. Rule 56.1 Stmt. ¶¶ 10-11; Mituzas Aff. ¶ 8).

Dickens alleges that he additionally was banned from part-time work on the Hotel bartending staff because of his threats.  (Dickens Aff. ¶ 10.)  Dickens claims that his bartending duties have never been reinstated; bartender positions have instead been given to "non-black and considerably younger" employees with less seniority.  (<u>Id.</u>)  Defendants claim that Dickens is not, and has never been, a member of the bartending staff.  (Mituzas Aff. ¶¶ 22-24; Def. Rule 56.1 Stmt. ¶¶ 27-31.)

On October 17, 2005, Dickens filed a NYSDHR <u>age</u> (but not race) discrimination complaint with respect to the "knife" incident.  (Dkt. No. 60-1: Metz Aff. Ex. B at 20-22; <u>see</u> Def.

Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 12.)  The NYSDHR dismissed the complaint on May 14, 2007, determining that there was no probable cause that the Hotel had engaged in any discriminatory practices.  (Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 12; Metz Aff. Ex. C at 24-25.)   The NYSDHR "investigation revealed in 1983, 1992, 2004 and 2005, [Dickens] was admittedly cited for inappropriate and or threatening behavior towards co-workers." (Metz Aff. Ex. C at 24.)  The NYSDHR further determined that the Hotel employed 133 employees who were similarly situated to Dickens, thirteen of whom were older than Dickens and ten were of similar age, i.e., in their sixties.  (Id. at 25.)  Dickens, however, informed the NYSDHR that "no other employees [were] subjected to similar treatment as he."  (Id.)   On August 20, 2007, the Equal Employment Opportunity Commission ("EEOC") adopted the NYSDHR's findings.  (Metz Aff. Ex. D at 27.) Dickens did not bring a federal lawsuit against the Hotel (until filing the instant action).  (Def. Rule 56.1 Stmt. & Pl. Counter Stmt. ¶ 12.)

In June 2006, Dickens complained that he was sexually harassed by Hotel employee Julio Aparicio.  (Dickens Aff. ¶ 12.)  Dickens alleges that Mituzas did not investigate this allegation but nevertheless concluded it was false (id. ¶ 13 ), which Mituzas disputes (Mituzas Aff. ¶ 10).

In October 2008, Trinidad (who is approximately 20 years younger than Dickens) allegedly was given Dickens' team leader position and placed "'in charge'" of the supply room without justification.  (Dickens Aff. ¶ 16.)  Several other unidentified, younger housemen thereafter "began to pervasively tease and ridicule" Dickens over his "apparent demotion," which teasing continues to occur.  (Id. ¶ 17; accord Dkt. No. 68: Dickens Opp. Br. at 15 ("Since 2008, plaintiff has also been subjected to discriminatory ridicule and incessant teasing over his no longer being in charge of the supply room . . . .").)  Mituzas counters that "[t]here is no job title, position or classification for being 'in charge of the supply room', and there is no salary differential associated

with that alleged position.  While it is possible that Plaintiff perceived that he was 'in charge of the supply room' . . ., that was not as a result of any action or determination by the Hotel or" Mituzas. (Mituzas Aff. ¶ 12; see Dkt. No. 72: Mituzas Reply Aff. ¶ 9.)  Mituzas denies that Dickens complained to the Hotel about the teasing and ridicule surrounding his perceived demotion. (Mituzas Aff. ¶ 13.)

In March 2010, Dickens was ordered to work on the same shift with Trinidad, allegedly in violation of Hotel policy that workers who had prior disputes with each other would not be staffed together.  (Dickens Aff. ¶ 19.)  Dickens admits that there is no written policy, but says he "observed a practice in which disputants are separated by shift."  (Id. ¶ 20.)  Mituzas responds that there is no such company policy; disputes between workers are evaluated on a case-by-case basis. (Mituzas Aff. ¶ 15; Mituzas Reply Aff. ¶ 10.)  Mituzas was unable to locate any record of Dickens complaining about his shift assignments with Trinidad .  (Mituzas Aff. ¶ 15.)  Dickens has worked on shifts with Trinidad "on and off for the last twenty years."  (Id.)

In May 2010, Dickens claims he filed an internal grievance "claiming a pervasively hostile work environment, including teasing, on account of age and prior protected activities," which defendants failed to investigate.  (Dickens Aff. ¶ 22.)  Mituzas has no recollection of such a complaint, and was unable to locate any record thereof.  (Mituzas Aff. ¶ 16.)

In April 2011, Dickens was struck by a bicycle while walking to work after a lunch break.  (Dickens Aff. ¶ 23.)  Defendants claimed that Dickens was not scheduled to work any further that day, which  barred him from collecting any workers' compensation benefits for his injury.  (Id.) On January 11, 2012, a Workers' Compensation Law Judge determined that Dickens "was on an unpaid lunch break when he suffered" his injury which therefore was not compensable.  (Mituzas Aff. ¶ 17 & Ex. B at 19.)  The Workers' Compensation Board affirmed on March 4, 2013.  (Id. at

18-21.)

In November 2013, Dickens alleges that Trinidad recanted his April 2005 accusation that Dickens had threatened him with a knife.  (Dickens Aff. ¶ 25.)  Trinidad also allegedly admitted that Mituzas had advised him to lie about the incident.  (Id.)  Dickens called a union-sponsored meeting at which Trinidad and Mituzas were present.  (Id. ¶¶ 25-26.)  At the meeting, Mituzas "got directly in Trinidad's face, and in a loud, threatening manner, stated, 'didn't you write in this letter . . .', while waiving a piece of paper with writing on it, '. . . that Ernest [Dickens] threatened you with a box cutter'?  Trinidad, shaking, and clearly afraid, said, 'I don't recall that'.  Trinidad, now intimidated and scared, said nothing further, and the meeting ended."  (Id. ¶ 26.)  Mituzas states that when Trinidad  was "unable to confirm or deny the events of 2005, owing to lack of memory," the Hotel determined that Dickens' claim was unsubstantiated.  (Mituzas Aff. ¶ 19; see also Mituzas Reply Aff. ¶¶ 11-12.)  Dickens alleges that Trinidad's failure of memory occurred because Mituzas intimidated Trinidad.  (Dickens Aff. ¶¶ 27-28.)  In any event, the only result of the meeting was that "the Hotel determined that it was not in a position to expunge the record of Plaintiff's agreed-upon one-day suspension."  (Mituzas Aff. ¶ 19; see Mituzas Reply Aff. ¶ 12.)

On December 11, 2013, Dickens filed another harassment and retaliation complaint with the NYSDHR based on the knife incident and its aftermath.  (Metz Aff. Ex. E at 29-36; see also Dickens Aff. ¶ 29; Mituzas Aff. ¶ 20.)  The NYSDHR determined on June 3, 2014 that there was no probable cause to support Dickens' complaint.  (Dkt. No. 60-2: Metz Aff. Ex. H at 36-38.)  The determination reads, in relevant part:

> The Complainant failed to proffer evidence connecting his class membership to any action taken against him by the Respondent.  Furthermore, the investigation revealed that even if the Complainant was able to refute the reasons offered by the Respondent for how he was treated, he would still be unable to establish that the Respondent's actions were motivated by a discriminatory animus

it had towards him.  Since the filing of the Complainant's verified complaint of discrimination on October 17, 2005, the Complainant has not suffered an adverse employment action.  Since no adverse employment action was taken against the Complainant, he cannot establish the requisite causal connection between protected activity and an adverse employment action.  Moreover, the length of time between the protected activity, Complainant's October 17, 2005 complaint, and an alleged recantation of Mr. Trinidad 's statement from 2005 denoting the Complainant's behavior towards another co-worker does not support an inference of retaliation discrimination.  It should be noted that Mr. Trinidad continues to stand by his earlier October, 2005 statement, although the Complainant asserted that Mr. Mituzas sought to intimidate Mr. Trinidad at a meeting in November, 2013.

(Id. at 37.)  On September 5, 2014, the EEOC adopted the NYSDHR's findings.  (Metz Aff. Ex. I at 40.)  Dickens filed this lawsuit in state court on October 23, 2014, and defendants removed it to this Court.  (Dkt. No. 1: Notice of Removal at 6, 15.)

Dickens claims that each of defendants' alleged discriminatory actions above was motivated by his age and/or race, or was in retaliation for his protected activities.  (See generally SAC.)

## ANALYSIS

## I.    LEGAL PRINCIPLES

### A.    General Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party

seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[1] The Court draws all inferences in favor of the non-moving party only after determining that such

---

[1] See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## B.   Additional Summary Judgment Standards In Employment Discrimination Cases

When a case turns on the intent of one party, as employment discrimination and retaliation claims often do, a "trial court must be cautious about granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[2]  Because the

---

[2]   Accord, e.g., Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("[I]n an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment."); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)
                                                                                       (continued...)

employer rarely leaves direct evidence of its discriminatory or retaliatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions.  E.g., Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1224.  "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error."  Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination or retaliation, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer.  E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Stern v. Trs. of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("[T]he question [on summary judgment is] . . . whether the evidence, taken as a whole, supports

---

2/       (...continued)
("[C]aution must be exercised in granting summary judgment where motive is genuinely in issue."); Cardozo v. Healthfirst, Inc., 210 F. Supp. 2d 224, 227 (S.D.N.Y. 1999); see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

a sufficient rational inference of discrimination.  To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." (quotations & alterations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'").[3/]  Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d at 41.

### C.  Governing Legal Standards For Title VII, ADEA and § 1981 Cases

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  Section 1981 provides, "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).

---

[3/]    See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652 (2d Cir. 1997).

In connection with discrimination claims under Title VII, the ADEA and § 1981 the Second Circuit applies the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  See, e.g., Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113 (2d Cir. 2015) (§ 1981); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015); Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012); Desir v. City of N.Y., 453 F. App'x 30, 33 (2d Cir. 2011); Ruiz v. Cty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (Title VII & § 1981); Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); Little v. NE Utils. Serv. Co., 299 F. App'x 50, 52 (2d Cir. 2008) (§ 1981); Holtz v. Rockefeller & Co., 258 F.3d 62, 74-77 (2d Cir. 2001) (Title VII & ADEA).

Under the familiar McDonnell Douglas burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[4/] Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully

---

[4/]     See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3 (2003); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310, 116 S. Ct. 1307, 1309 (1996); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47 (1993); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 (2d Cir. 2011); United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011); Leibowitz v. Cornell Univ., 584 F.3d at 498; Dorfman v. Doar Commc'ns, Inc., 314 F. App'x 389, 390 (2d Cir. 2009); DeSalvo v. Volhard, 312 F. App'x 394, 396 (2d Cir.), cert. denied, 558 U.S. 932, 130 S. Ct. 70 (2009); Fall v. N.Y.S. United Teachers, 289 F. App'x at 420-21; Nader v. ABC Television, Inc., 150 F. App'x 54, 55 (2d Cir. 2005); Mandell v. Cty. of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

discriminated against the employee.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506, 113 S. Ct. at 2747 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).[5/]

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision. E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[6/] The burden on the defendant at this phase is one of production rather than persuasion. E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142, 120 S. Ct. at 2106.[7/]

---

[5/]  See also, e.g., Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Crawford v. Dep't of Investigation, 324 F. App'x 139, 141 (2d Cir. 2009); Smith v. New Venture Gear, Inc., 319 F. App'x 52, 54 (2d Cir. 2009); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006), cert. denied, 549 U.S. 1282, 127 S. Ct. 1855 (2007); Mandell v. Cty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

[6/]  See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. at 310, 116 S. Ct. at 1309; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Desir v. City of N.Y., 453 F. App'x at 33-34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 498-99; Dorfman v. Doar Commc'ns, Inc., 314 F. App'x at 390; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Nader v. ABC Television, Inc., 150 F. App'x at 55; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Mandell v. Cty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Schnabel v. Abramson, 232 F.3d at 88; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Scaria v. Rubin, 117 F.3d at 654; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 38.

[7/]  See also, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 257, 101 S. Ct. at 1096; Chiang v. Donahoe, 579 F. App'x 39, 42 (2d Cir. 2014); Terry v. Ashcroft, 336 F.3d at 144 n.17; Scaria v. Rubin, 117 F.3d at 654.

14

"Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106.

If the defendant articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse employment decision more likely than not was motivated in whole or part by discriminatory reasons.[8/] E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106.[9/] "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

The Supreme Court in 2000 clarified the standard at this stage of the McDonnell

---

[8/] Under the ADEA, a plaintiff bringing a disparate treatment claim must demonstrate at the final stage of the McDonnell Douglas analysis that age discrimination was the "but-for" cause of the adverse employment action, not merely one of the motivating factors. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009).

[9/] See also, e.g., Raytheon Co. v. Hernandez, 124 S. Ct. at 517 n.3; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 510, 113 S. Ct. at 2749; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093-94; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Allen v. Murray-Lazarus,463 F. App'x 14, 16 (2d Cir. 2012); Desir v. City of N.Y., 453 F. App'x at 34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 499; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Feingold v. New York, 366 F.3d at 152; Mandell v. Cty. of Suffolk, 316 F.3d at 380-81; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Weinstock v. Columbia Univ., 224 F.3d at 42; Scaria v. Rubin, 117 F.3d at 654.

<u>Douglas</u> analysis:

> [I]n <u>St. Mary's Honor Center</u>. . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not <u>compel</u> judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "[i]t is not enough . . . to <u>dis</u> believe the employer; the factfinder must <u>believe</u> the plaintiff's explanation of intentional discrimination."
>
> In reaching this conclusion, however, we reasoned that it is <u>permissible</u> for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .
>
> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, <u>a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated</u>.
>
> <u>This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability</u>. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"
>
> <u>Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's</u>

> explanation is false, and any other evidence that supports the employer's case and
> that properly may be considered on a motion for judgment as a matter of law.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis

added & citations omitted).

After Reeves, the Second Circuit has made clear that merely proving a prima facie

case and disproving the employer's explanation for its conduct at the third step of the McDonnell

Douglas analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis

is necessary:

> In examining the impact of Reeves on our precedents, we conclude that
> Reeves prevents courts from imposing a per se rule requiring in all instances that [a
> Title VII] claimant offer more than a prima facie case and evidence of pretext. . . .
> But the converse is not true; following Reeves, we decline to hold that no [Title VII]
> defendant may succeed on a summary judgment motion so long as the plaintiff has
> established a prima facie case and presented evidence of pretext.  Rather, we hold
> that the Supreme Court's decision in Reeves clearly mandates a case-by-case
> approach, with a court examining the entire record to determine whether the plaintiff
> could satisfy his "ultimate burden of persuading the trier of fact that the defendant
> intentionally discriminated against the plaintiff."

Schnabel v. Abramson, 232 F.3d at 90 (emphasis added).[10]

---

[10]     See also, e.g., Braun v. Securitas Sec. Servs. USA, Inc., 372 F. App'x 113, 114 (2d Cir.
2010); Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., 307 F. App'x 596, 599 (2d Cir. 2009);
Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005); Feingold v. New York, 366
F.3d at 152; Roge v. NYP Holdings, Inc., 257 F.3d 164, 167-68 (2d Cir. 2001); Abdu-
Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469-70 (2d Cir.), cert. denied, 534 U.S. 993,
122 S. Ct. 460 (2001); James v. N.Y. Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000);
Weinstock v. Columbia Univ., 224 F.3d at 42 ("In short, the question becomes whether the
evidence, taken as a whole, supports a sufficient rational inference of discrimination.");
Aksamit v. 772 Park Ave. Corp., 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2,
2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a
nondiscriminatory reason for the adverse action do not save the plaintiff from summary
judgment when there is insufficient evidence of discrimination."), aff'd, 128 F. App'x 204
(2d Cir. 2005); Weiser v. Forest Pharm., Inc., 99 Civ. 1809, 2001 WL 293951 at *7-8
(S.D.N.Y. Mar. 26, 2001); Tanay v. St. Barnabas Hosp., 99 Civ. 9215, 2001 WL 262695 at
*4 (S.D.N.Y. Mar. 15, 2001); Connell v. Consol. Edison Co., 109 F. Supp. 2d 202, 207-08
(continued...)

## II.     DEFENDANTS ARE GRANTED SUMMARY JUDGMENT

### A.     The Bulk of Dickens' Claims are Time-Barred

Defendants argue that Dickens' Title VII, ADEA and § 1981 claims are barred by the relevant statutes of limitation.  (Dkt. No. 61: Def. Br. at 11-16; Dkt. No. 71: Def. Reply Br. at 2-5.)

### 1.     Dickens' Title VII and ADEA Claims

Title VII and the ADEA require that a plaintiff file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of an alleged discriminatory act. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B).  A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct.  See, e.g., Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980); Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000).  "In order to establish an 'evenhanded administration of the law,' district courts must follow the Supreme Court's warning not to disregard the timing requirements simply because we may feel sympathy for a particular litigant."  Smith v. Henderson, 137 F. Supp. 2d 313, 317-18 (S.D.N.Y. 2001) (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726 (1984)).

EEOC administrative exhaustion is "an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  Tanvir v. N.Y.C. Health & Hosps. Corp., 480 F. App'x 620, 621 (2d Cir. 2012) (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir.2001)); accord, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) ("[A]dministrative exhaustion is not a jurisdictional

---

[10]/     (...continued)
(S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record – whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence – to support an inference of discrimination.").

requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses."); Francis v. City of N.Y., 235 F.3d 763, 767 (2d Cir. 2000) (filing a timely charge with the EEOC is not jurisdictional but more akin to a statute of limitations that is "subject to waiver, estoppel, and equitable tolling").

If a plaintiff files a timely EEOC charge, he must file suit under Title VII or the ADEA within 90 days of receiving a right-to-sue letter.  42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Friedman v. Swiss Re Am. Holding Corp., 512 F. App'x 94, 95-96 (2d Cir. 2013); Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996).[11/]  Dickens filed his operative NYSDHR complaint on December 11, 2013.  (See page 6 above.)  On September 5, 2014, the EEOC adopted the NYSDHR's no probable cause findings and issued its right-to-sue notice.  (See id.)  This lawsuit, filed on October 23, 2014 (see page 7 above), was initiated within the 90-day period following the EEOC's final determination.

While Dickens' lawsuit is timely, most of his claims are not.  Defendants correctly argue that all incidents occurring before February 14, 2013—300 days prior to Dickens' December 11, 2013 NYSDHR complaint—are time-barred.  (Def. Br. at 12.)  This includes all of the alleged discriminatory or retaliatory acts but two: the November 2013 union meeting at which Mituzas allegedly intimidated Trinidad into not retracting his allegations regarding Dickens' use of a knife, and Dickens' alleged annual requests to be reinstated to the bartending staff.  (See pages 3-6 above).

---

[11/]    See also, e.g., Marshall v. Nat'l Ass'n of Letter Carriers, 03 Civ. 1361, 2003 WL 22519869 at *10 (S.D.N.Y. Nov. 7, 2003) (Peck, M.J.) ("Title VII requires a complaint to be filed within 90 days . . . of receipt of an EEOC right to sue letter.") (citing cases), R. & R. adopted, 2004 WL 2202574 (S.D.N.Y. Sept. 30, 2004); Heard v. MTA Metro-North Commuter R.R., 02 Civ. 7565, 2003 WL 22176008 at *2-3 (S.D.N.Y. Sept. 22, 2003) ("Having received the right-to-sue letter, the claimant has ninety days to bring suit.").

2.      **Dickens' § 1981 Claim**

Claims brought under § 1981 are subject to a four-year statute of limitations. Lawson v. Rochester City Sch. Dist., 446 F. App'x 327, 328 (2d Cir. 2011); Batista v. Waldorf Astoria, 13 Civ. 3226, 2015 WL 4402590 at *11 (S.D.N.Y. July 20, 2015); Burgis v. Dep't of Sanitation City of N.Y., 13 Civ. 1011, 2014 WL 1303447 at *4 (S.D.N.Y. Mar. 31, 2014) ("Although § 1981 does not contain a statute of limitations, the Supreme Court has held that the four-year federal 'catch-all' statute of limitations applies.") (quoting Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S. Ct. 1836, 1845 (2004)), aff'd, 798 F.3d 63 (2d Cir. 2015), cert. denied, No. 15-825, 2016 WL 763339 (Feb. 29, 2016).   Therefore, Dickens' § 1981 claims that accrued prior to October 23, 2010 are time-barred.  Dickens' only timely claims are those related to the November 2013 meeting regarding the knife incident, his alleged annual requests to be reinstated to the bartending staff, and the April 2011 denial of his workers' compensation benefits.  (See pages 3-6 above.)

3.      **The Continuing Violation Doctrine Is Not Applicable**

Dickens argues that the continuing violation doctrine applies to save his Title VII, ADEA and § 1981 claims.  (Dkt. No. 68: Dickens Opp. Br. at 13-17.)   "[I]f a plaintiff has experienced a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Washington v. Cty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (quotations & citation omitted). Thus, if a plaintiff files a timely EEOC charge "as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 155-56 (2d Cir. 2012) (quotations & citation omitted), cert. denied, 133 S. Ct. 1724 (2013).

The same holds true for § 1981 claims.  See, e.g., Ramlal-Nankoe v. Ithaca Coll., 591 F. App'x 23,

25 (2d Cir. 2015); Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011).  Discrete

acts that occur outside the limitations period (such as failure to promote, demotion, or termination),

however, "cannot be brought within it, even when undertaken pursuant to a general policy that

results in other discrete acts occurring within the limitations period." Chin v. Port Auth. of N.Y. &

N.J., 685 F.3d at 157; see also, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122

S. Ct. 2061, 2072 (2002).

          The Supreme Court has held that a "discrete retaliatory or discriminatory act

'occurred' on the day that it 'happened.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. at 110,

122 S. Ct. at 2070.  On the other hand, "[h]ostile environment claims are different in kind from

discrete acts.  Their very nature involves repeated conduct." Id. at 115, 122 S. Ct. at 2073.  "The

incidents of allegedly offensive conduct must be 'more than episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive.'" Holtz v. Rockefeller & Co., 258 F.3d

62, 75 (2d Cir. 2001).  If Dickens were to prove a hostile work environment, then as long as "an act

contributing to the claim occurs within the filing period, the entire time period of the hostile

environment may be considered by a court for the purposes of determining liability." Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. at 117, 122 S. Ct. at 2074.

          The continuing violation doctrine does not save Dickens' claims.  A hostile work

environment claim requires a showing that "(1) 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment,' and (2) 'a specific basis

exists for imputing the conduct that created the hostile environment to the employer.'" Lekettey v.

City of N.Y., No. 15-1169, --- F. App'x ----, 2016 WL 482109 at *2 (2d Cir. Feb. 8, 2016) (quoting

Howley v. Town of Stratford, 217 F.3d 141, 153-54 (2d Cir. 2000)).  "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).  The hostility of a work environment is assessed considering the "totality of the circumstances."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quotations omitted).

Isolated incidents of discriminatory comments or conduct are not sufficient to establish a hostile work environment.  E.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998) ("'[S]imple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) ("'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII"); Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) ("Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'  Generally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" (citations omitted)); Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.").[12]  "Among the factors [the courts] consider are 'the frequency of the

_____

[12]  See, e.g., Byrne v. Telesector Res. Grp., Inc., 339 F. App'x 13, 18 (2d Cir. 2009) (isolated incidents of offensive misconduct "do not rise to a sufficiently serious level to manifest a work environment 'permeated with discriminatory intimidation'"); DeSalvo v. Volhard, 312 F. App'x 394, 397 (2d Cir. 2009); Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) ("'As a general rule, incidents must be more than "episodic; they must be sufficiently
(continued...)

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with [the] employee's work

performance.'" Feingold v. New York, 366 F.3d at 150 (quoting Harris v. Forklift Sys., Inc., 510

U.S. at 23, 114 S. Ct. at 371).[13/]

------------------------------------

[12/]    (...continued)
continuous and concerted in order to be deemed pervasive.'"'"); Rizzo-Puccio v. Coll.
Auxiliary Servs., Inc., No. 99-9272, 216 F.3d 1073 (table), 2000 WL 777955 at *3 (2d Cir.
June 14, 2000) ("[I]solated remarks or occasional episodes of harassment do not constitute
a hostile environment within the meaning of Title VII."); Quinn v. Green Tree Credit Corp.,
159 F.3d 759, 768 (2d Cir. 1998) ("As a general matter, 'isolated remarks or occasional
episodes of harassment will not merit relief under Title VII; in order to be actionable, the
incidents of harassment must occur in concert or with a regularity that can reasonably be
termed pervasive.'"), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,
536 U.S. 101, 122 S. Ct. 2061 (2002); Slaitane v. Sbarro, Inc., 03 Civ. 5503-04, 2004 WL
1202315 at *13 (S.D.N.Y. June 2, 2004) (Peck, M.J.); Diaz v. Weill Med. Ctr. of Cornell
Univ., 02 Civ. 7380, 2004 WL 285947 at *18 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.) (&
cases cited therein), aff'd, 138 F. App'x 362 (2d Cir. 2005); Viruet v. Citizen Advice Bureau,
01 Civ. 4594, 2002 WL 1880731 at *15 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.) ("Isolated
incidents of discriminatory comments or conduct [are] not sufficient to establish a hostile
work environment.") (citing cases); Adeniji v. Admin. for Children Servs., 43 F. Supp. 2d
407, 413 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.) ("As Magistrate Judge Peck correctly
points out, it is well-settled that one racial remark, or even sporadic remarks, are not
sufficient to establish a hostile work environment."), aff'd., No. 99-7561, 201 F.3d 430
(table), 1999 WL 1070027 (2d Cir. Nov. 18, 1999); see also, e.g., Rinsler v. Sony Pictures
Entm't, Inc., 02 Civ. 4096, 2003 WL 22015434 at *6 (S.D.N.Y. Aug. 25, 2003) (Single, stray
remark, unsupported by any other evidence of discriminatory animus, did not create an
inference of discrimination.) (& cases cited therein); Manessis v. N.Y.C. Dep't of Transp.,
02 Civ. 359, 2003 WL 289969 at *6 (S.D.N.Y. Feb. 10, 2003) ("Single incidents, unless very
serious, generally do not satisfy the necessary requirement of severity or pervasiveness."),
aff'd, No. 03-7208, 2004 WL 206316 (2d Cir. Feb. 3, 2004).

[13/]    Accord, e.g., Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 82 (2d Cir. 2009);
Patane v. Clark, 508 F.3d at 113; Demoret v. Zegarelli,  451 F.3d at 149-50; Mormol v.
Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128,
148 (2d Cir. 2003); Slaitane v. Sbarro, Inc., 2004 WL 1202315 at *13; see also, e.g.,
Clemente v. N.Y.S. Div. of Parole, 01 Civ. 3945, 2004 WL 1900330 at *12 (S.D.N.Y. Aug.
24, 2004) ("As for pervasiveness, the Court concludes that six occurrences of relatively mild
workplace difficulty over the course of a year do not, as a matter of law, constitute
'pervasive' harassment.").

Here, the multiple incidents from 2004 onward do not establish a hostile work environment.  Dickens wishes to string together almost ten years of discrete events (several of which are separated by gaps of a year or more) with hardly any detail to describe the "unbroken regimen of harassment" (Dkt. No. 66: Dickens Aff.  ¶ 9), "hazing-like atmosphere" (id. ¶ 14), and teasing (id. ¶ 17) he endured.  See, e.g., Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001) ("'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"); Wood v. Sophie Davis Sch., 02 Civ. 7781, 2003 WL 21507579 at *2 (S.D.N.Y. June 30, 2003) ("Although [plaintiff] . . . attempts to characterize these [alleged discriminatory] actions as part of a hostile work environment . . . these actions cannot be considered to create an 'objectively hostile or abusive work environment.' . . . These actions are 'episodic' in nature, and objectively are not sufficiently continuous and concerted enough that they so severely permeate the work environment with 'discriminatory intimidation, ridicule, and insult' so as to alter the conditions of her employment and create an abusive working environment.") (quoting Harris v. Forklift Sys., Inc., 510 U.S. at 21, 114 S. Ct. at 370).

Moreover, most (if not all) of the allegedly discriminatory incidents lack any evidentiary support that they occurred due to Dickens' protected characteristics, his subjective beliefs to the contrary notwithstanding.  See, e.g., Moore v. Kingsbrook Jewish Med. Ctr., No. 11-CV-3625, 2013 WL 3968748 at *6 (E.D.N.Y. July 30, 2013) (collecting cases).  The only allegation of continuous harassment is the vague allegation of teasing by coworkers.  (See pages 4-5 above.)  By Dickens' own admission, however, he was teased not because of any protected characteristic (age or race), but because of his "apparent demotion" in 2008.  (See page 4 above.)  A "demotion" is a discrete act and any claim as to the demotion itself cannot be saved by the continuous violation

doctrine.  Moreover, as discussed below, there are no remarks, stray or otherwise, of a racial or ageist nature.  (See pages 26-27 below.)  Accordingly, the continuing violation doctrine does not help Dickens save his Title VII and ADEA claims that accrued prior to February 14, 2013, which are dismissed as untimely, as are his § 1981 claims that accrued prior to October 23, 2010.

**B.**     **Dickens' Discrimination Claims Fail on the Merits**

Dickens' surviving claims are governed by the McDonnell Douglas framework, and thus he must first establish a prima facie case of discrimination under each statute.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); see cases cited at page 12 above.  In order to make out a prima facie case of discrimination under Title VII, the ADEA and § 1981, Dickens must establish that (1) he is within a protected group; (2) he was qualified for the job at issue; (3) he was subjected to an adverse employment action; and (4) this action occurred under circumstances giving rise to an inference of discrimination.  See, e.g., Johnson v. Andy Frain Servs., Inc., --- F. App'x ----,  2016 WL 210098 at *1 (2d Cir. Jan. 19, 2016); White v. Andy Frain Servs., Inc., No. 14-3332, --- F. App'x ----, 2015 WL 6684485 at *1 (2d Cir. Nov. 3, 2015).

As an African-American individual over forty years of age, Dickens has protected characteristics under § 1981 and Title VII and is within the protected age group under the ADEA.  29 U.S.C. § 631(a); 42 U.S.C. § 2000e-2(a)(1).  Defendants do not argue that Dickens was unqualified for the job at issue.  The Court further assumes arguendo (subject to some exceptions noted below) that Dickens' inability to receive workers' compensation benefits, Mituzas's alleged intimidation of Trinidad and defendants' refusal to "reinstate" Dickens to the bartending staff could be deemed "materially adverse change[s] in the terms and conditions of employment."[14]  Galabya

---

[14]     The Court, however, rejects Dickens' argument that the Hotel's alleged violation of its
(continued...)

v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (quotations omitted).  Dickens, however, fails to satisfy the fourth element of his prima facie case, because the evidence does not suggest that any adverse employment actions occurred because of his race or age, or otherwise allow for an inference of discrimination.

A variety of circumstances can lead to an inference of discrimination, including "'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious

---

14/      (...continued)
unwritten "company policy" as to shift assignments amounted to an adverse employment action.  (See page 5 above.)  "The receipt of undesirable assignments, without more, amounts to nothing more than a 'mere inconvenience,' not a 'materially adverse change in the terms and conditions of employment.'"  Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (quoting Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("receiving unfavorable schedules or work assignments . . . do[es] not rise to the level of [an] adverse employment action[] . . . because [it does] not have a material impact on the terms and conditions of Plaintiff's employment.").  Dickens does not allege that he was unable to perform his job duties because of his shift assignments with Trinidad, or that the assignments otherwise impacted his position, and thus cannot establish an adverse employment action.

Similarly, Dickens' allegations of workplace teasing and harassment and defendants' failure to remedy the same are so fatally lacking in detail that they cannot be the basis for finding an adverse employment decision.  There is furthermore no evidence that the harassing behavior relates to Dickens' protected characteristics to allow for any inference of discrimination.  As noted above, Dickens himself claims that the cause of any teasing was his "apparent demotion."  See Chiang v. Donahoe, 579 F. App'x 39, 41 (2d Cir. 2014) ("Actions that are 'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse. . . .  Title VII does not set forth 'a general civility code for the American workplace.'") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)).

comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Littlejohn v. City of N.Y., 795 F.3d 297, 312 (2d Cir. 2015).  The Second Circuit has "characterized the evidence necessary to satisfy this initial [prima facie] burden as 'minimal' and 'de minimis,' and the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage" of the analysis.  Zimmermann v. Assoc. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted).  Thus, the fourth element in the McDonnell Douglas prima facie test "is a flexible one that can be satisfied differently in differing factual scenarios." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).

### 1.    Dickens' Workers' Compensation Benefits

Dickens claims that he was denied workers' compensation benefits under the following circumstances:

> On or about April 28, 2011, I was struck by a bicycle messenger on a public street while walking back to the hotel after a lunch break.  Defendants claimed, falsely, that [I] was not scheduled to work any further that day.  But, the work schedule from 4/28/11, shows that I was scheduled to work from 8:30am until 11:30pm.  This denial had the effect of barring [me] from collecting any workers compensation for [t]his injury.

(Dkt. No. 66: Dickens Aff. ¶ 23, citation omitted.)  Dickens presents no other evidence to support this claim other than a chart that purportedly shows that he was scheduled to work a full day on April 28, 2011.  (Dkt. No. 65: Wotorson Aff. Ex. 10.)  He does not allege that he heard any derogatory remarks about his race or age during the entirety of his employment, much less in connection with the workers' compensation claim, and he makes only the most generic of statements that others outside of his protected group were treated more favorably (but not at all in connection with workers' compensations claims).  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)

("It is axiomatic that mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristic."); Monachino v. Bair, 769 F. Supp. 2d 431, 439 (S.D.N.Y. 2011) (Plaintiff "insists that he was singled out for unfair treatment.  Yet he has not presented any evidence, such as discriminatory comments or disparate treatment of employees similarly situated to [plaintiff], from which a reasonable factfinder could conclude that the [employer's] actions were based on a protected characteristic."), aff'd, 481 F. App'x 20 (2d Cir. 2012).  Dickens' "mere subjective belief that he was discriminated against because of his [protected characteristics] does not sustain a . . . discrimination claim." Moore v. Kingsbrook Jewish Med. Ctr., No. 11-CV-3625, 2013 WL 3968748 at *6 (E.D.N.Y. July 30, 2013) (quotations omitted).  Here, there is no evidence from which a jury could infer that defendants' conduct in denying workers' compensation benefits was motivated, even in part, by discriminatory animus.  See, e.g., Simpri v. City of N.Y., 00 Civ. 6712, 2003 WL 23095554 at *3 (S.D.N.Y. Dec. 30, 2003) ("Courts within 'the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination.'").

### 2.    The November 2013 Meeting

In November 2013, Dickens alleges that Trinidad recanted his April 2005 accusation that Dickens had threatened him, and also allegedly admitted that Mituzas had advised him to lie about the incident.  (See page 6 above.)  When Mituzas later questioned Trinidad about the threats at a union-sponsored meeting, Trinidad allegedly was too "intimidated and scared" to come clean as a "direct result of interference of the hotel, through Mituzas."  (See id.)  As with Dickens' workers' compensation claim, there is simply no evidence that Dickens was targeted due to his race or age.  Dickens' claim thus fails for the reasons stated immediately above.  More fundamentally, Dickens does not allege any adverse employment action stemming from this incident, at least not

from November 2013 forward.  Dickens cannot make timely the adverse consequences that occurred

in 2005 after he was first accused of threatening his co-workers.

### 3.      Dickens' Bartending Duties

With regard to his bartending duties, Dickens attempts to raise an inference of

discrimination through a showing of disparate treatment.   A disparate treatment claim can be

established by "'showing that an employer treated plaintiff less favorably than a similarly situated

employee outside his protected group.'"  Abdul–Hakeem v. Parkinson, 523 F. App'x 19, 20 (2d Cir.

2013).  The Second Circuit has held that to establish disparate treatment, a plaintiff must show that

she was "'similarly situated in all material respects' to the individuals with whom she seeks to

compare herself."  Graham v. L.I.R.R., 230 F.3d 34, 39 (2d Cir. 2000); see also, e.g., Johnson v.

Andy Frain Servs., Inc., No. 15-1143, --- F. App'x ----, 2016 WL 210098 at *2 (2d Cir. Jan. 19,

2016).

Dickens claims that he was banned from the Hotel bartending staff after he was

accused of threatening his coworkers.  (Dkt. No. 66: Dickens Aff. ¶ 10.)  Dickens goes on to state:

> I had previously observed that I appeared to be the oldest bartender, and one of a
> very small number of blacks who ever served on the bartending staff.  Yet, I ha[ve]
> asked to be reinstated each year, since 2005, without any success.  I am frequently
> passed over for consideration in favor of non-black and considerably younger
> [applicants], who have considerably less seniority than I do.  I know this from my
> direct observations.

(Id.)  Dickens presents no evidence that he and the comparators reported to the same supervisor,

were tasked with similar responsibilities, or were otherwise similarly situated.  More importantly,

his allegations are conclusory and present no details as to who the alleged comparators are.  See,

e.g., Sethi v. Narod, 12 F. Supp. 3d 505, 546 (E.D.N.Y. 2014) ("Plaintiff has failed to demonstrate

how he is similarly situated to these individuals.  For example, Plaintiff has provided copies of

emails and other documents which reference the titles of some individuals, such as in email signature blocks, but these documents fail[] to provide any specificity concerning the nature of those employees' job duties or responsibilities . . . ."); Whethers v. Nassau Health Care Corp., 956 F. Supp. 2d 364, 379 (E.D.N.Y. 2013) ("These allegations . . . do not provide sufficient evidence that defendants treated her less favorably than similarly situated employees because plaintiff fails to name similarly situated individuals with similar job titles and responsibilities.  As a result, these conclusory allegations of discriminatory intent are not sufficient to make out the required prima facie case."), aff'd, 578 F. App'x 34 (2d Cir. 2014); Winston v. City of N.Y., No. 12-CV-0395, 2013 WL 4516097 at *2 (E.D.N.Y. Aug. 23, 2013) (Plaintiff "makes vague, general allegations that other male employees were treated differently, but fails to identify any individuals or claim that they were similarly situated in all material respects.  For instance, she does not provide the names of any similarly situated male employees, nor does she attempt to describe these individuals' positions and/or history with the NYPD . . . .").  Dickens has thus failed to establish that the (allegedly) repeated denial of bartending duties occurred in circumstances giving rise to an inference of discrimination.[15]

---

[15]    To the extent Dickens asserts that his denial of bartending duties amounted to a failure to promote, that claim fails as well.  To establish a prima facie case of a discriminatory failure to promote, a plaintiff must demonstrate that: "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004).  Dickens states that he "asked to be reinstated each year," but does not state whether the Hotel was seeking bartender applicants when he did so, or whether there were even any vacancies within the actionable limitations period.  Dickens "must offer 'concrete particulars' to substantiate" his claim, which he has not done. Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 572 (S.D.N.Y. 2012), aff'd, 526 F. App'x 124 (2d Cir. 2013).

### C.    Dickens' Retaliation Claims Fail on the Merits

Retaliation claims under Title VII, the ADEA and § 1981 also are analyzed pursuant to the McDonnell Douglas burden-shifting framework and Title VII principles.  Littlejohn v. City of N.Y., 795 F.3d 297, 315 (2d Cir. 2015); Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006).  Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in a protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The ADEA contains a nearly identical provision that bars retaliation for complaints of age-based employment discrimination.  29 U.S.C. § 623(d).  Although § 1981 does not contain an explicit anti-retaliation provision, such claims are evaluated using substantially the same framework as Title VII and ADEA claims.  See, e.g., Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

Therefore, under Title VII, the ADEA and § 1981, "[t]o succeed on a claim of retaliation, a plaintiff must show that 1) the employee engaged in [a] protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action." Blanco v. Brogan, 620 F. Supp. 2d 546, 553 (S.D.N.Y. 2009); accord, e.g., Littlejohn v. City of N.Y., 795 F.3d at 316; Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d at 205-06; Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weixel v. Bd. of Educ., 287 F.3d 138, 148-

49 (2d Cir. 2002).[16/]

Once a plaintiff makes out a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. E.g., Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552-53 (2d Cir. 2010); Hicks v. Baines, 593 F.3d at 164; Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the defendant meets this burden, to avoid summary judgment the plaintiff must point to evidence sufficient to present an inference that the proffered reason is a mere pretext for retaliation. E.g., Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014); Kaytor v. Elec. Boat Corp., 609 F.3d at 552-53; Hicks v. Baines, 593 F.3d at 164; Jute v. Hamilton Sundstrand Corp., 420 F.3d at 173.

Causation can be established either directly through evidence of retaliatory animus or indirectly by demonstrating that the adverse employment action followed quickly on the heels of the protected activity or through other evidence such as disparate treatment of fellow employees. See, e.g., Kercado-Clymer v. City of Amsterdam, 370 F. App'x 238, 242-43 (2d Cir. 2010); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d at 224; DeCintio v. Westchester Cty. Med. Ctr., 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965, 108 S. Ct. 455 (1987). "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); accord, e.g., Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 n.5 (2d Cir.

---

[16/]     See also, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001); Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Chinnery v. N.Y.S. Office of Children & Family Servs., 10 Civ. 882, 2014 WL 1651950 at *11 (S.D.N.Y. Apr. 25, 2014), R. & R. adopted, 2015 WL 1029601 (S.D.N.Y. Mar. 10, 2015); Munck v. New Haven Sav. Bank, 251 F. Supp. 2d 1078, 1085 (D. Conn. 2003).

2013).

Dickens alleges that the retaliation began in 2001 when Mituzas asked him to voluntarily dismiss his internal complaint of age discrimination against Hotel manager Igor Buercher; Dickens refused, and Mituzas "became enraged." (See page 2 above.)  While this incident could qualify as direct evidence of retaliatory animus, it occurred three years before Dickens allegedly first experienced any retaliation, and almost ten years before the first of Dickens' timely retaliation allegations occurred.   The Court acknowledges that "[w]here there are longer gaps in time between protected activity and adverse employment action, the inference of causation may be inferred from the fact that the employer was waiting for the opportune time to retaliate." White v. City of Middletown, 45 F. Supp. 3d 195, 219 (D. Conn. 2014).  The amount of time that elapsed here, however, is simply too great to establish a causal connection between Dickens' protected activities and defendants' alleged retaliatory conduct, even considering Dickens' direct evidence. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 274, 121 S. Ct. 1508, 1511 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); Babarinsa v. Kaleida Health, 58 F. Supp. 3d 250, 266 (W.D.N.Y. 2014) (gap of nearly a year insufficient to establish causation), aff'd, 622 F. App'x 36 (2d Cir. 2015); Rouse v. City of N.Y., 08 Civ. 7419, 2009 WL 1532054 at *12 (S.D.N.Y. June 2, 2009) ("the ten month period . . . stretches the bounds of the time frame that courts have allowed to support an inference of causation based on temporal proximity.").

Dickens' remaining evidence is equally unavailing.  Dickens claims that he filed an internal grievance on May 25, 2010 claiming "a pervasively hostile work environment, including teasing, on account of age and prior protected activities" (Dickens Aff. ¶ 22), and a September 2012 dual filing with the NYSDHR and EEOC alleging "pervasive age discrimination and retaliation" (id. ¶ 24).  These protected activities also are too far removed from the alleged retaliatory conduct to

support Dickens' prima facie case.  Almost a year elapsed between Dickens' May 2010 internal grievance and the denial of his workers' compensation benefits, and over a year passed between Dickens' September 2012 discrimination charge and the November 2013 union meeting.  (See pages 5-6 above.)  Therefore, because Dickens has no further direct evidence of retaliatory motive, and no other evidence that could give rise to an inference of retaliation, his retaliation claims with regard to the workers' compensation benefits and November 2013 meeting fail.

Finally, there is no evidence to support Dickens' prima facie retaliation case as to the denial of bartending duties.  Dickens' naked assertion that he has "asked to be reinstated [to the bartending staff] each year, since 2005, without any success" (see page 28 above) is so devoid of detail that it cannot support his retaliation claim.  Dickens does not specify when he requested his reinstatement other than on an "annual" basis.  The Court therefore cannot meaningfully evaluate the temporal proximity of those requests in relation to Dickens' protected activities.  See Feliciano v. City of N.Y., 2015 WL 4393163 at *9 (S.D.N.Y. July 15, 2015) (Plaintiff "does not provide the date of any of the times he was allegedly criticized by Mulqueen, nor does he allege when Mulqueen's change in policies was implemented.  It is therefore impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct.").  Without any other evidence of retaliatory animus, Dickens cannot meet his burden at this phase of the analysis.  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact.").

34

## **CONCLUSION**

For the reasons set forth above, defendants' summary judgment motion is <u>GRANTED</u> with respect to Dickens' Title VII, ADEA and § 1981 claims.  The Clerk of Court is directed to enter judgment for defendants and to close the case.

SO ORDERED.

Dated:       New York, New York
             March 1, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge


Copies to:       Counsel (ECF)